**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUXOTTICA USA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13-cv-4429 |
| | ) | |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A" and | ) | |
| DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff Luxottica USA LLC ("Plaintiff" or "Luxottica") hereby brings the present action

against the Partnerships and Unincorporated Associations identified on Schedule A attached

hereto and DOES 1-100 (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action

pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a) and

(b), and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise

under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law

claims are so related to the federal claims that they form part of the same case or controversy and

derive from a common nucleus of operative facts.

2.     Venue is proper in this Court pursuant 28 U.S.C. § 1391, and this Court may

properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets business activities toward consumers in Illinois and causes harm to Luxottica's business

within this Judicial District. Through at least the fully interactive commercial Internet websites operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), each of the Defendants has targeted and solicited sales from Illinois residents by operating online stores that offer shipping to Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit Luxottica products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Luxottica substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Luxottica to combat online counterfeiters which trade upon Luxottica's reputation and the goodwill of the federally registered Ray-Ban trademarks by selling and/or offering for sale unlicensed and counterfeit products featuring the Ray-Ban trademarks (the "Counterfeit Ray-Ban Products"). The Defendants create the Defendant Internet Stores by the thousands and design them to appear to be selling genuine Ray-Ban products, all the while actually selling low-quality, unlicensed Counterfeit Ray-Ban Products to unknowing consumers. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope of their massive counterfeiting operation. Luxottica is forced to file these actions to combat Defendants' illegal counterfeiting of the registered Ray-Ban trademarks, as well as to protect unknowing consumers from purchasing low-quality Counterfeit Ray-Ban Products over the Internet. Luxottica has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of the valuable Ray-Ban trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.      Plaintiff Luxottica USA LLC ("Luxottica") is based in Port Washington, New York and operates as a subsidiary of Luxottica Group SpA, which is headquartered in Milan, Italy.  Luxottica USA LLC is the exclusive wholesale distributor of genuine Ray-Ban products in the United States and has the exclusive right to enforce the RAY-BAN trademarks in the United States.

5.      For generations, the Ray-Ban brand has been the undisputed world leader in the field of sun and prescription eyewear products, including those which prominently display the famous, internationally recognized, and federally registered RAY-BAN trademarks (collectively, the "Ray-Ban Products").

6.      Ray-Ban Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine Ray-Ban Products are instantly recognizable as such.  In the United States and around the world, the Ray-Ban brand has come to symbolize high quality, and Ray-Ban Products are among the most recognizable eyewear in the world.  Ray-Ban Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Sunglass Hut and high-end department stores, and through the official Ray-Ban.com website which was launched in 1995 and began e-commerce sales in 2009.

7.      Luxottica and its predecessors began using the RAY-BAN trademarks in 1937 and have continuously sold eyewear under the RAY-BAN and other trademarks (collectively, the "RAY-BAN Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the RAY-BAN Trademarks.  Luxottica's use of the marks has also built

3

substantial goodwill in and to the RAY-BAN Trademarks. The RAY-BAN Trademarks are famous marks and valuable assets. Ray-Ban Products typically include at least one of the registered RAY-BAN Trademarks.

8.    Several of the RAY-BAN Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 650,499 | *Ray-Ban* | FOR: SUNGLASSES, SHOOTING GLASSES, AND OPHTHALMIC LENSES, IN CLASS 26. |
| 1,080,886 | **RAY-BAN** | FOR: OPHTHALMIC PRODUCTS AND ACCESSORIES – NAMELY, SUNGLASSES; EYEGLASSES; SPECTACLES; LENSES AND FRAMES FOR SUNGLASSES, EYEGLASSES, SPETACLES – IN CLASS 9. |
| 1,093,658 | *Ray-Ban* | FOR: OPHTHALMIC PRODUCTS AND ACCESSORIES – NAMELY, SUNGLASSES; EYEGLASSES; SPECTACLES; LENSES AND FRAMES FOR SUNGLASSES, EYEGLASSES, SPECTACLES AND GOGGLES; AND CASES AND OTHER PROTECTIVE COVERS FOR SUNGLASSES, EYEGLASSES, SPECTACLES– IN CLASS 9. |

| 1,320,460 |  | FOR: SUNGLASSES AND CARRYING CASES THEREFOR, IN CLASS 9. |
|---|---|---|
| 1,490,305 | **RAY-BAN** | FOR: CLOTHING, NAMELY, T-SHIRTS, IN CLASS 25. |
| 1,726,955 |  | FOR: FOR: BAGS; NAMELY, TOTE, DUFFLE AND ALL PURPOSE SPORTS BAGS, IN CLASS 18. FOR: CLOTHS FOR CLEANING OPTHALMIC PRODUCTS, IN CLASS 21. FOR: CLOTHING AND HEADGEAR; NAMELY, HATS, IN CLASS 25. |
| 2,718,485 | **RAY-BAN** | FOR: GOODS MADE OF LEATHER AND IMITATION LEATHER, NAMELY, WALLETS, CARD CASES FOR BUSINESS CARDS, CALLING CARDS, NAME CARDS AND CREDIT CARDS, IN CLASS 18. FOR: CLOTHING FOR MEN AND WOMEN, NAMELY, POLO SHIRTS; HEADGEAR, NAMELY, BERETS AND CAPS. |
| 3,522,603 |  | FOR: SUNGLASSES, EYEGLASSES, LENSES FOR EYEGLASSES, EYEGLASSES FRAMES, CASES FOR EYEGLASSES, IN CLASS 9. |

9.      The above registrations for the RAY-BAN Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  Attached hereto as **<u>Exhibit 1</u>** are true and correct copies of the Trademark Registration Certificates for the trademarks included in the above table.

10.     The RAY-BAN Trademarks are distinctive when applied to the Ray-Ban Products, signifying to the purchaser that the products come from Luxottica and are manufactured to Luxottica's quality standards.  Whether Luxottica manufactures the products itself or contracts with others to do so, Luxottica has ensured that products bearing the RAY-BAN Trademarks are manufactured to the highest quality standards.

11.     The RAY-BAN Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125 (c)(1), and have been continuously used and never abandoned.

12.     Luxottica has expended substantial time, money, and other resources in advertising and promoting the RAY-BAN Trademarks.  In fact, Luxottica has expended millions of dollars annually in advertising, promoting and marketing featuring the RAY-BAN Trademarks.  Ray-Ban Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs.  As a result, products bearing the RAY-BAN Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Luxottica.  Ray-Ban Products have become among the most popular of their kind in the U.S. and the world.  The RAY-BAN Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.  *Id.*  As such, the goodwill associated with the RAY-BAN Trademarks is of incalculable and inestimable value.

13.     Genuine Ray-Ban Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Ray-Ban brand.

14.     Since at least as early as 2009, genuine Ray-Ban Products have been promoted and sold at the official Ray-Ban.com website.  Sales of Ray-Ban Products via the Ray-Ban.com website are significant.  The Ray-Ban.com website features proprietary content, images and designs exclusive to the Ray-Ban brand.

**The Defendants**

15.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Ray-Ban Products to consumers within the State of Illinois.

16.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the RAY-BAN Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Luxottica to learn Defendants' true identities and the exact interworking of their massive counterfeit network.  In the event that Defendants and/or third party service providers provide additional credible information regarding the identities of Defendants, Luxottica will take appropriate steps to amend the Complaint.

7

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17.     The overwhelming success of the Ray-Ban brand has resulted in its significant counterfeiting.  Consequently, Luxottica regularly investigates suspicious websites identified in proactive Internet sweeps and reported by consumers.  Despite Luxottica's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores, which generate massive profits selling Counterfeit Ray-Ban Products.

18.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Ray-Ban Products.   Defendants' websites and marketplace listings look sophisticated and accept payment in U.S. dollars.   Numerous Defendant Domain Names also incorporate the RAY-BAN Trademarks into the URL, and oftentimes, the websites include copyright-protected content, images, and product descriptions, making it very difficult for consumers to distinguish such counterfeit sites from an authorized retailer.   Some of the Defendant Internet Stores even go so far as to admit to selling counterfeit products, explicitly stating that they are offering "replica" or "fake" Ray-Ban products for sale.   The Defendants have not been licensed or otherwise authorized to use any of the RAY-BAN Trademarks, and none of the Defendants are authorized resellers of genuine Ray-Ban Products.

19.     The Defendant Internet Stores accept payment via Western Union, credit card and/or PayPal and ship the Counterfeit Ray-Ban Products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.  A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.  Defendants further perpetuate the illusion of legitimacy by offering "live 24/7"

customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

20.     Defendants also deceive unknowing consumers by using the RAY-BAN Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Ray-Ban Products.  Additionally, upon information and belief, Defendants use other illegal search engine optimization (SEO) tactics to increase website rank. As a result, links to Defendants' websites show up at or near the top of popular search results and misdirect consumers searching for genuine Ray-Ban Products.

21.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.  Many of Defendants' names and addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use a privacy service that conceals the owners' identity and contact information.  On information and belief, Defendants constantly register new Defendant Internet Stores using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.  Such Defendant Internet Store registration patterns are one of many tactics used by the Defendants to conceal both their identities and the full scope of Defendants' massive illegal counterfeiting operation.

22.     Even though Defendants operate under multiple fictitious names, many similarities between the Defendant Internet Stores indicate a coordinated effort to sell Counterfeit Ray-Ban Products.  For example, many of the Defendant Internet Stores have

virtually identical layouts, even though different fake aliases were used to register the respective domain names. In addition, Counterfeit Ray-Ban Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Ray-Ban Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, and the use of text and copyright-protected images copied from the official Ray-Ban.com website.

23.     Defendants, without any authorization or license, have knowingly and willfully used and continue to use the RAY-BAN Trademarks in connection with the advertisement, offering for sale, and sale of Counterfeit Ray-Ban Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to Illinois residents and, on information and belief, each Defendant has sold Counterfeit Ray-Ban Products into Illinois.

24.     Defendants' use of the RAY-BAN Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Ray-Ban Products, including the sale of Counterfeit Ray-Ban Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Luxottica.

## COUNT I

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

25.     Luxottica hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 24.

26.     Defendants' promotion, marketing, offering for sale and sale of Counterfeit Ray-Ban Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection or association with Luxottica or to the origin, sponsorship, or approval of Defendants' Counterfeit Ray-Ban Products by Luxottica.

27.     By using the RAY-BAN Trademarks on the Counterfeit Ray-Ban Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Ray-Ban Products.

28.     Defendants' willful and intentional false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit products to the general public is a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

29.     Luxottica has no adequate remedy at law and, if Defendants' actions are not enjoined, Luxottica will continue to suffer irreparable harm to its reputation, and the goodwill of the Ray-Ban brand will continue to be eroded.

## COUNT II

### CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING THE RAY-BAN WORD MARK

30.     Luxottica hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 29.

31.     Luxottica is the exclusive wholesale distributor of genuine Ray-Ban Products in the United States and has the exclusive right to enforce the RAY-BAN Trademarks in the United States.   The registrations for the RAY-BAN Trademarks are in full force and effect. Additionally, the RAY-BAN Trademarks are famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

32.     Upon information and belief, Defendants have acted with the bad faith intent to profit from the unauthorized use of the RAY-BAN Trademarks and the goodwill associated therewith by registering various domain names which are identical to, confusingly similar to or dilutive of the RAY-BAN Trademarks.

33.     Defendants have no intellectual property rights in or to the RAY-BAN Trademarks.

34.     Defendants' actions constitute cyberpiracy in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

35.     Luxottica has no adequate remedy at law, and the registration and use of the Defendant Domain Names has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Luxottica.

**COUNT III**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, et seq.)**

36.     Luxottica hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35.

37.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their products as those of Luxottica, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Ray-Ban Products, representing that their products have Luxottica's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

38.     The foregoing Defendants' acts constitute a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510, et seq.

39.     Luxottica has no adequate remedy at law, and Defendants' conduct has caused Luxottica to suffer damage to its reputation and erosion to the goodwill of the RAY-BAN Trademarks.  Unless enjoined by the Court, Luxottica will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Luxottica prays for judgment against Defendants as follows:

1) That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   a. using the RAY-BAN Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Ray-Ban Product or is not authorized by Luxottica to be sold in connection with the RAY-BAN Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Ray-Ban Product or any other product produced by Luxottica, that is not Luxottica's or not produced under the authorization, control or supervision of Luxottica and approved by Luxottica for sale under the RAY-BAN Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Luxottica, or sponsored or approved by, or connected with Luxottica;

   d. further infringing the RAY-BAN Trademarks and damaging the associated goodwill;

   e. otherwise competing unfairly with Luxottica in any manner;

    f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Luxottica, nor authorized by Luxottica to be sold or offered for sale, and which bear any Luxottica trademark, including the RAY-BAN Trademarks or any reproduction, counterfeit copy or colorable imitation thereof;

    g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, the Online Marketplace Accounts, the Defendant Domain Names or any other domain name or online marketplace account that is being used to sell Counterfeit Ray-Ban Products; and

    h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Ray-Ban Product or not authorized by Luxottica to be sold in connection with the RAY-BAN Trademarks; and

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Luxottica a written report under oath setting forth in detail the manner in which Defendants have complied with paragraph 1, a through h, supra;

3) Entry of an Order that the domain name registries for the Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within two (2) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Luxottica's selection until further ordered by this

Court, and that the domain name registrars take any steps necessary to transfer the Defendant

Domain Names to a registrar of Luxottica's selection until further ordered by this Court;

4) Entry of an Order that, upon Luxottica's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, Internet search engines, Web hosts, social media websites, domain-name registrars and domain name registries that are provided with notice of the injunction, cease facilitating access to any and all websites and accounts through which Defendants engage in the sale of Counterfeit Ray-Ban Products bearing the RAY-BAN Trademarks;

5) That Defendants account for and pay to Luxottica all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

6) In the alternative, that Luxottica be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the RAY-BAN Trademarks and $100,000 per domain name pursuant to 15 U.S.C. § 1117(d);

7) That Luxottica be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

Dated this 17th day of June 2013.                    Respectfully submitted,


                                          __/s/ Justin R. Gaudio_____
                                          Kevin W. Guynn
                                          Amy Ziegler
                                          Justin R. Gaudio
                                          Greer, Burns & Crain, Ltd.
                                          300 South Wacker Drive, Suite 2500
                                          Chicago, Illinois 60606
                                          312.360.0080
                                          312.360.9315 (facsimile)
                                          kguynn@gbclaw.net
                                          aziegler@gbclaw.net
                                          jgaudio@gbclaw.net

                                          *Counsel for Plaintiff Luxottica USA LLC*